JUSTICE JOHN C. SHEEHY
(retired, but called to participate) dissenting:
This is a “taking” case; that is, the issue on appeal is whether the plaintiff’s property has been inversely condemned for a public use, which requires the payment to plaintiff of just compensation under federal and state constitutions.
As the state and local regulations are applied in this case, I find a “taking” of private property by the public has occurred, and so I dissent.
There is no dispute as to the damages done to the plaintiff’s property. The findings of the District Court (No. 18) show that “plaintiff has suffered damages to her property of a permanent and irreparable nature by means of the diminution of value of the property, based upon fair market value, in the sum of $50,000.00.” These damages, the District Court found, resulted from the adoption and imposition on plaintiff’s property of the limitations and servitude of the regulations. The damages represent approximately two-thirds of the fair market value of plaintiff’s property without the servitude and limitations.
Such damages must be compensated by the public authority unless, as the majority say, (1) the land-use regulation is substantially related to the governmental interest of protecting the public health, and (2) the regulation utilizes the least restrictive method to achieve that end without denying the owner economically viable use of the land. The regulation, and its application here, do not meet either prong of the standard.
*240 The District Court founded its decision on a finding of fact that the activity prohibited, i.e., a septic system within 100 feet of the 100-foot flood plain, would be injurious to the health and safety of the community. The evidence in this record is completely lacking that the regulation (1) is substantially related to the state’s interest in protecting public health, and (2) is the least restrictive method to attain that end.
The original regulation (the 1975 rules) required the septic system to be set back 100 feet from the stream. This provision agreed with the later-adopted 1980 Environmental Protection Agency Design Manual. That manual sets out a 100-foot distance from water supply sources such as wells, surface water, springs, and so on, but makes no reference at all to 100-year flood plain boundaries. In other words, the EPA did not recognize a need for a set-back from flood plain boundaries. To justify such a rule, the record should show some degree of scientific study on which to base the need or a health basis for the flood plain set-back. None appears here. All other 100-foot space rules are related to some source of potable water. Adoption of a rule relating to a theoretical boundary, without reference to any studies showing danger to waters, is arbitrary and capricious. No issue of public health is presented.
To escape the import of the lack of scientific basis for the 100-foot flood plain rule, the majority rely on the “presumption” that all legislative enactments are valid. As one judge has said, presumptions are the bats of the law; they disappear in the sunlight of evidence to the contrary, or the showing of no foundation for their existence.
Nor is “judicial deference” to the legislating body any excuse for upholding a baseless regulation. Courts should jealously insist on the right to examine judicially the actions of public bodies without any deferment or subordination of judicial function to other branches of government.
This dissenter was the author of the opinions in Knight v. City of Billings (1982), 197 Mont. 165, 642 P.2d 141, and Western Energy Co. v. Genie Land Co. (1987), 227 Mont. 74, 737 P.2d 478. The majority attempt to distinguish Knight, where the plaintiffs suffered a 30 percent loss in the value of their properties, on the basis that here the plaintiff still has a possibility of use for her property. Knight cannot be so distinguished, for even there the plaintiffs still had use of their properties as residences. Here, the plaintiff is severely limited in the use of her property under the 100-foot flood plain rule. Her only possibility is to build 1200 to 1400 feet back from the river, or to *241 undertake very expensive devices for sewage disposal. Western Energy is not in accord with this decision. Western Energy was not a “taking” case. It related to the due process implication of the regulation involved.
I find no evidence in the record which translates to a basis that the 100-foot flood plain set-back rule is substantially related to the public health. Under the record here, that rule could have been set at 30 feet or a mile. Either is as justifiable here as the 100-foot rule. No studies support the regulation. I therefore dissent and would reverse and remand for judgment in favor of the plaintiff.